## Case No. 10,608a.

### The OSTEONTHE.

### [6 Adm. Rec. 166.]

District Court, S. D. Florida.   Nov. 24, 1858.

SALVAGE—COMPENSATION—DISPOSITION OF SUR PLUS PROCEEDS OF CARGO.

[1. Fire broke out in the hold of a vessel, loaded with cotton, lying at the wharf in Key West. She was cast loose from the wharf and drifted across the channel where she grounded. The master having decided to scuttle her, employed a mail steamer to pull her off the bank and tow her up the harbor to a suitable place. This service was performed in about three hours, without danger to the towing vessel. Held, that $400 was a reasonable compensation.]

[2. Where a master made a contract to pay ten thousand dollars for getting out cargo and raising the hull of a vessel, which was scuttled in the harbor of Key West, to extinguish a fire, held, that such contract was reasonable and should be enforced, the total proceeds of the vessel and hull amounting to over $28,000.]

[3. Surplus proceeds of cargo remaining after the payment of the salvage awards will not necessarily be paid at once to the master, although he is the only claimant, but a reasonable time may be allowed to permit the owners of the cargo themselves, or the underwriters, if they have paid, as in case of total loss, to appear and file claims in their own behalf.]

[This was a libel for salvage by Oliver Nelson and others, master, etc., of the mail steamer Matagorda, against the hull, materials, and cargo of the ship Osteonthe.]

Winer Bethel, Esq., for libellants.
John L. Tatum, for respondent.

MARVIN, District Judge. This ship (Maxwell, master), while employed at this port in taking in a cargo of cotton and corn, which had been previously wrecked on the Florida Reef, in the American ship Sultan (Berry, master), was discovered to be on fire in her hold. She drifted across the channel after being cast loose from the wharf and grounded in fourteen feet of water on the middle ground. It being thought desirable by the master that she should be scuttled and sunk, he employed the mail steamer Matagorda (Nelson, master), then lying in the harbor, to pull her off the bank and tow her up the harbor to a suitable position where she could be sunk. This service was well performed by the steamer in about two hours, without incurring danger to herself and without incurring much expense. It contributed to save the property concerned, and the libellants claim a salvage compensation therefor. The master scuttled and sunk the ship, but not so effectually but that the top of the ship

was burnt off, and a portion of the cargo consumed by the fire. The master afterwards employed Mr. Charles Tift to get out and land the cargo, and raise the hull of the ship, under an agreement entered into with him to give him $10,000 for this service. This agreement, it was thought at the time by the master, was the best agreement he could make to save the property. The agreement has been fully performed by Mr. Tift, and now he petitions the court to be paid the sum agreed upon out of the proceeds of the property in the registry of the court. The master admits and affirms the agreement, and still thinks, with others, that the sum agreed to be paid Mr. Tift is reasonable in amount, and no more than a fair compensation for the work and labor performed; and the court is of the same opinion. Several boats saved rigging, etc., to the value of $144.51. The hull, materials, and cargo saved have been sold by the marshal under a previous order of the court for the gross sum of $28,594.81; the cargo selling for $25,192.05, and the hull and materials for $3,402.76. Under the circumstances, it is ordered, adjudged, and decreed that the clerk pay the libellants, Oliver Nelson and others, out of the proceeds of said ship and cargo, the sum of $400, in full compensation for their services and the services of the steamer Matagorda rendered in towing the said ship and cargo to the upper part of the harbor, as by them alleged in their libel; and that he also pay to the several boats named in the marshal's account sales $48.17; and, that he also pay out of the said proceeds the sum of $10,000 to Mr. Charles Tift, for his services in raising the hull of said ship, and getting out and landing the cargo, as above stated; and that he apportion the said sum of $10,448.17, the costs and expenses of this suit, and such other charges upon the property as have been incurred for the common benefit of both ship and cargo, between the proceeds of both ship and cargo, and make a statement thereof; and that he pay the remaining proceeds of the said ship to Captain Maxwell, the late master thereof, for and on account of whom it may concern.

Touching the remaining proceeds of the sales of the cargo, it is to be remarked that Captain Maxwell is at present, in his capacity of master of the ship Osteonthe, the only claimant before the court. But it is suggested by Mr. Welch, a general agent of underwriters in this country and in England, that the original owners of the cargo, or the underwriters upon the same who have paid a total loss, would prefer that the money should remain in the registry of the court until they have notice and time allowed them to claim it. The suggestion is probably true, and the question is whether the court should allow them further time to make their claim.

Ordinarily, in salvage causes in this court, where the voyage is broken up, and the cargo sold, and the master is the sole claimant,

the remaining proceeds are ordered by the court to be paid to him, for and on account of whom it may concern. And he commonly, in accordance with usages of trade, pays them to the shipowner, to be accounted for by him to the persons entitled to them. But neither this practice of the court nor this usage of trade in any manner interferes with the exercise of a sound discretion on the part of the court as to the time the order for the disposal of the proceeds should be made. Neither the master nor the shipowner, as such, has any interest in the proceeds of the cargo. They act only as agents for others. Their authority to receive the proceeds is superseded by the interposition of a claim by their principals in person or by their specially authorized agent. The owners of the cargo, whether original or made such by the acceptance of an abandonment, have the right, if exercised in due time, thus to supersede the master and shipowner, and receive their money from the court. And this question is here simply whether further time should be allowed them for that purpose. I am of the opinion that it ought. The money, if paid over to Captain Maxwell, would undoubtedly be accounted for by him and by the shipowner; for the court does not distrust their integrity. At the same time, it is not ignorant of the fact that, in many instances, where masters have, in like cases, received from the court proceeds of cargoes, they and the owners of their ships have forgotten to pay them to the persons entitled. This remark is made without any reference to Captain Maxwell or the owners of the ship Osteonthe, but with the view to show the propriety of generally giving time to parties interested to interpose for the protection of their interests. The money is safe where it is. The court is competent to ascertain to whom it rightly belongs, and to settle and determine every demand upon it. The facts, too, that this cargo has been wrecked twice; that it was originally shipped on board the ship Sultan, whereof Berry was master, and by him reshipped on board the Osteonthe; that Berry was in the port at the time the disaster to the Osteonthe occurred, and at the time this suit was commenced; and that the cargo was attached,—afford an additional reason for delay in making a decision on the question of the present claim, for it suggests the question whether, under the circumstances, Maxwell is authorized virtute officii to make the claim. However, I attach but little importance to these circumstances, and hold the claim of Maxwell valid, and the proceeds will be paid to him in the absence of any better claim being interposed, after a reasonable time has been given for that purpose.

It is ordered that the decision, upon the question of the disposition of the proceeds of the cargo remaining in court be postponed to the eighth day of March next, and that in the meantime, parties interested be at liberty to file their claims.